KNIGHT & RYAN PLLC
Robert A. Ryan #12084
robert@knightryan.com
Scott A. Knight #9083
scott@knightryan.com
8880 W. Sunset Rd., Suite 130
Las Vegas, Nevada 89148
Telephone: (702) 462-6083

MUNGER TOLLES & OLSON LLP
Bethany W. Kristovich (CA State Bar No. 241891)
bethany.kristovich@mto.com
pro hac vice forthcoming
Daniel B. Levin (CA State Bar No. 226044)
daniel.levin@mto.com
pro hac vice forthcoming
Juliana M. Yee (CA State Bar No. 304564)
juliana.yee@mto.com
pro hac vice forthcoming
Jessica O. Laird (CA State Bar No. 331713)
jessica.laird@mto,com
pro hac vice forthcoming
350 South Grand Avenue, Fiftieth Floor
Los Angeles, California 90071-3426
Telephone: (213) 683-9100
*Attorneys for Movant ByHeart, Inc.*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| In re: Subpoena Issued to:<br>Dairy Farmers of America<br><br>Related to:<br><br>United States District Court for the Southern District of Texas<br><br>Anit Joseph and Luke Pooley, Individually and as next friend of K.P., a minor,<br><br>vs.<br><br>ByHeart, Inc., a Delaware corporation, and Target Corporation, a Minnesota corporation,<br><br>Case No.: 3:25-cv-00391 | Case No. 2:26-cv-00250-JCM-BNW<br><br>**BYHEART'S REPLY IN SUPPORT OF EMERGENCY MOTION TO COMPEL PRODUCTION OF DRY MILK POWDER SAMPLES FOR TESTING AND DOCUMENTS FROM NON-PARTY DAIRY FARMERS OF AMERICA** |

## I. INTRODUCTION

ByHeart seeks expedited treatment of this Motion because DFA-manufactured milk powder samples tested positive for *C. bot*, further testing may yield more positives, and precise identification of the scope, timing, and lots associated with potentially *ongoing* contamination is an urgent priority. ByHeart's narrowly-focused request for expedition seeks to address threatened prejudice stemming from a potential loss of critical evidence and uncertainty regarding the scope of contamination.

DFA has consistently sought to delay producing samples for testing,[1] but further delay prejudices ByHeart's ability to defend itself in pending litigation. The prejudice to ByHeart is independent of an extension of certain litigation deadlines in the underlying action. To be clear, there is no "stay" in *Joseph*; the Court extended ByHeart's deadline to respond to the complaint pending the Judicial Panel on Multidistrict Litigation's determination whether to centralize cases for case management purposes. An extension of pleading deadlines does not suspend ByHeart's obligation to investigate, preserve, and prepare to defend against serious allegations involving infant safety, particularly where there is a concurrent FDA investigation and where ingredient samples may be contaminated or otherwise become unavailable with the passage of time. Nor does it ameliorate ByHeart's ongoing production shutdown while the source of contamination is being investigated.

DFA's other smokescreen is the FDA investigation itself. DFA asserts that it is cooperating with the FDA's investigation and argues that should absolve it from having to participate in third-party discovery. To the contrary, ByHeart is seeking to sample physical materials that were *not* taken by the FDA and remain at DFA. Regulatory agencies are necessarily resource-constrained, and ByHeart is working to aid the FDA investigation by conducting additional testing. To date, ByHeart's investigation has yielded more positive test results than the

---

[1] ByHeart served this Motion on DFA on January 30, 2026, via email to its counsel Jill Lombard and Elizabeth Fawell, who have appeared on numerous meet and confer calls for DFA. Attempts to serve one of DFA's attorneys, Lauren Colton, bounced back. ByHeart sent printed copies via FedEx overnight on February 2, 2026.

1

FDA's. DFA cites no authority for the proposition that it can use the FDA investigation to shield itself from legitimate discovery.

Nor does the possibility that DFA may be a potential party insulate it from a subpoena, particularly where the evidence sought—regarding the source and scope of contamination—is plainly central to ByHeart's defenses. DFA should be compelled to immediately produce the key samples and documents.

## II.   ARGUMENT

### A.   Emergency Relief Is Necessary

DFA's assertion that there is no emergency ignores the prejudice caused by continued delay. DFA does not dispute the positive test results of its products, including the FDA's recent report genetically linking DFA-manufactured milk powder to positive lots of ByHeart formula and an infected infant. These findings alone establish the immediate need for additional testing to identify the breadth and extent of the contamination coming out of DFA's facility. The need for testing is especially acute given DFA's confirmation that it is not performing its own testing. Laird Decl. ¶ 34.

Rather than address these issues, DFA asserts that "the whole milk powder processed by DFA met all specifications and passed all required tests." Opp. at 8. That does not detract from the ***positive test results from DFA dry milk powder***. Even if it were a defense, however, DFA is refusing to produce the very documentation that might substantiate those assertions.

DFA also argues that it is cooperating with the FDA, but the FDA has confirmed there is no hold in place preventing the testing of these materials. *See* Laird Decl. ¶ 14. ByHeart cannot rely on potential future agency action to preserve evidence or protect its litigation interests, particularly where DFA has declined to take corrective action or acknowledge the FDA's findings—from samples collected by ByHeart *and* the FDA—linking DFA to the ongoing outbreak. *Id.* ¶ 34. In addition, each test reveals additional information about the likelihood of identifying *C. bot* in a given ingredient lot and creates opportunity for genetic testing. The FDA

itself noted the results of ByHeart's lab testing in its January 23 announcement. *See* Mullane Decl. ¶ 19, Ex. A.

Everyone except DFA recognizes the urgency of testing additional samples and conducting a thorough investigation into the claims alleged by the *Joseph* family and their infant.[2] In fact, plaintiffs in a related action have recently moved to amend their complaint to add DFA as a party, underscoring the materiality and importance of the discovery sought here. *See Wescott, et al. v. ByHeart, et al.*, No. 3:25-cv-06039 (W.D. Wash.), ECF No. 29. The Court should not countenance DFA's efforts to deflect from the urgency of this request by focusing on the ultimate question of legal responsibility. That DFA may later be added as a party in this case does not preclude, and should not be an impediment to, obtaining critical third-party discovery at this stage. Each day that passes without definitive identification of the scope of the contamination harms ByHeart's ability to remediate the contamination and provide those learnings to an industry that is critical to American families.

The bulk of DFA's argument relates to its incorrect assertion that the *Joseph* action has been "stayed." ByHeart did not seek or obtain a "stay" of that case; it obtained a limited extension of its deadline to respond to the complaint while a motion to transfer and centralize ("MDL Motion") is pending before the Judicial Panel on Multidistrict Litigation. This short "Continuance"—as the Court's Order describes it—is not a stay. Order Granting Mot. for Continuance and Time to Answer First Am. Compl., *Joseph, et al. v. ByHeart, Inc., et al.*, No. 3:25-cv-00391 (S.D. Tex. Jan. 30, 2026), ECF No. 21.

More to the point, even if the parties had agreed to stay proceedings between themselves (which they did not), that would not undermine the urgency of this request. An extension of pleading response deadlines does not suspend ByHeart's practical, real-world need to investigate the root cause of the outbreak, nor to collect and test ingredient samples that may be contaminated or otherwise become unavailable with the passage of time. Testing conducted months after the

---

[2] The owner of the product, Organic West, has also consented to production of the requested samples subject to agreement on testing protocols. DFA has refused their requests as well.

fact—without contemporaneous knowledge of storage, handling, or chain-of-custody conditions—may not reliably establish when contamination occurred, whether it was intermittent or systemic, or which lots, suppliers, and processes were implicated.  Delay in obtaining samples creates the additional risk that product may be opened, moved, or exposed to different environmental factors that can compromise the reliability of test results.

DFA cites no authority holding that a stipulated deadline extension between the parties should prevent this Court from resolving this third-party discovery dispute on an emergency basis.  Nor does it cite any case law authorizing the Court to stay this action.[3]  *Cardoza v. Bloomin' Brands, Inc.*, cited by DFA, is inapposite.  Opp. at 7 (citing 141 F. Supp. 3d 1137 (D. Nev. 2015)).  The only emergency belatedly identified by the movant in that case as a source of prejudice was an upcoming discovery cutoff of which they were previously aware—nothing like the urgent need for testing established here.  *Cardoza*, 141 F. Supp. 3d at 1144.  DFA also cites *IFPS Corp. v. Carrillo*, where the court found there was no emergency because the normal briefing schedule allowed ample time to comply with upcoming pre-trial deadlines.  Opp. at 8 (citing No. 2:14-cv-00509-GMN-NJK, 2015 WL 13678978, at *2 (D. Nev. Nov. 25, 2015)).  This is an emergency not because of the case calendar, but because of real-world public health and evidentiary needs.

**B.    ByHeart's Subpoena Is a Proper Exercise of Rule 45 Subpoena Power**

Ignoring longstanding practice of allowing third-party discovery via subpoena, DFA argues that a Rule 45 subpoena cannot be used to gather evidence against a potential party.  It does

---

[3] In describing the legal standard for emergency motions, DFA cites a series of cases in which courts denied emergency motions based solely on impending discovery deadlines or the *moving* party's delay in seeking to resolve the dispute in a timely manner.  These cases are inapposite here, where the delay is entirely attributable to DFA.  *See MST Mgmt., LLC v. Chicago Doughnut Franchise Co.*, No. 2:21-cv-00360-JAD-DJA, 2021 WL 7907621, at *2 (D. Nev. Dec. 7, 2021) (denying emergency motion where movant waited a month to meet and confer regarding the discovery dispute); *Herndon v. City of Henderson*, No. 2:19-cv-00018-GMN-NJK, 2020 WL 5502155, at *2 (D. Nev. Sept. 11, 2020) (denying emergency motion where deposition deadline was only identifiable emergency); *Mendoza v. Amalgamated Transit Union Int'l*, No. 2:18-cv-00959-JCM-CWH, 2019 WL 13211169, at *2 (D. Nev. May 23, 2019) (same); *V5 Techs. v. Switch, Ltd.*, No. 2:17-cv-02349-KJD-NJK, 2019 WL 6529052, at *2 (D. Nev. Dec. 4, 2019) (denying emergency motion where movant waited until eve of discovery cutoff to file).

not cite a single case in support of this supposedly well-established proposition. To the contrary, subpoenas are a well-recognized device for obtaining third-party discovery. The notion that, because DFA is a *potential* party, it is less susceptible to a subpoena than a true third party is quixotic, to say the least. DFA offers no plausible explanation for why evidence of the source of contamination would not be directly relevant to ByHeart's defenses. Instead, DFA cites to a series of cases, none of which bear on the permissibility of third-party discovery relevant to a defense in the case. *See* Opp. at 6 (citing *Monte H. Greenawalt Revocable Tr. v. Brown*, No. 2:12-cv-01983-LRH-VCF, 2013 WL 6844760 (D. Nev. Dec. 19, 2013) (holding that discovery into third-party trusts, accounts, or the sources of funds was irrelevant because—even if fully explored—it would not help determine whether a breach of contract occurred or what balance was owed); *Oregon Int'l Air Freight Co. v. Bassano*, No. 3:21-cv-01480-SB, 2022 WL 3357699 (D. Or. July 5, 2022) (denying discovery into the names of former employees because there was no factual basis to believe that their names bore any relation to the alleged claims or that the plaintiff could assert claims against the employees themselves)).

Here, there is a clear factual basis for the discovery sought—confirmed test results genetically linking DFA's dry milk powder to ByHeart formula that has tested positive for *C. bot* and at least one infant affected by this outbreak. Mullane Decl. ¶¶ 18-19. ByHeart's requests are, if anything, more narrowly tailored than those approved by the court in *Oregon*, which sought "[a]ny and all non-privileged communications between [the non-party], on the one hand, and Former OIA Employees, on the other, that refer to or relate to the allegations in the Complaint." *Oregon*, 2022 WL 3357699, at *2. DFA also cites *Medtronic MiniMed, Inc. v. Animas Corp.*, but it is not clear why as, unlike the case here, the discovery sought related to the relationship between plaintiffs and a third-party with no alleged connection to the subject of the case. Opp. at 6 (citing No. C 13-80294 WHA, 2014 WL 308952, at *3 (N.D. Cal. Jan. 27, 2014)).

Plaintiffs' negligence claims and the proportionate responsibility regime in Texas (where this case is pending) entitle ByHeart to develop evidence concerning who in the supply chain

5

caused or contributed to the alleged harm. Discovery into DFA's ingredients is a necessary step to defend against Plaintiffs' claims and to support comparative fault allocations.

### C. DFA Is Not Entitled to Fees

DFA's request for fees is unwarranted because ByHeart's Motion has "a reasonable basis in law and fact" and is therefore substantially justified. Fed. R. Civ. P. 37(a)(5)(B); *see Pierce v. Underwood*, 487 U.S. 552, 565, n.2 (1988). A good-faith dispute over relevance or burden—particularly in the context of third-party discovery—does not support fee shifting, and DFA cites no authority holding otherwise. Nor does disagreement over whether expedited treatment is warranted transform a discovery motion into a sanctionable filing under the Court's inherent authority or 28 U.S.C. § 1927. Those remedies require clear evidence of bad faith, improper purpose, or conduct that "unreasonably and vexatiously" multiplies proceedings. 28 U.S.C. § 1927; *see, e.g.*, *In re Keegan Mgmt. Co., Sec. Litig.*, 78 F.3d 431, 436 (9th Cir. 1996) (holding statutory sanctions must be supported by a finding of bad faith). None is present here: A "polished" motion supported by evidence reflects diligence, not bad faith, and filing a single motion to compel after extended meet-and-confer efforts does not constitute "unreasonable and vexatious" conduct. *See Akl v. Virginia Hosp. Ctr.*, 471 B.R. 1, *18 (D.D.C. 2012) (recognizing that a single motion does not unreasonably or vexatiously multiple proceedings).[4] DFA's claimed "harm" likewise does not support sanctions, as opposing a good-faith discovery motion—even on an expedited schedule—is a routine incident of litigation, not a compensable injury. *See, e.g.*, *Slovak v. Golf Course Villas Homeowners' Ass'n*, No. 3:13-cv-00569-MMD-CLB, 2020 WL 929515, at *6 (D. Nev. Feb. 26, 2020) (declining to sanction attorney where he had reasonable or good faith basis to believe in the merits of his motion).

---

[4] ByHeart did not "conceal" a stay of the underlying action. As described above, it obtained a limited extension of a pleading deadline, not a stay; in any event, the responsive pleading deadlines have no bearing on whether a third-party discovery dispute warrants prompt resolution.

6

## III. CONCLUSION

ByHeart respectfully requests that the Court address the Motion on an expedited basis and issue an order compelling DFA to produce the requested samples and documents within 7 days of the issuance of its order.

DATED: February 5, 2026

KNIGHT & RYAN PLLC

 /s/ Robert A. Ryan
Robert A. Ryan #12084
robert@knightryan.com
Scott A. Knight #9083
scott@knightryan.com
KNIGHT & RYAN
8880 W. Sunset Rd., Suite 130
Las Vegas, Nevada 89148
Tel.: (702) 462-6083

MUNGER, TOLLES & OLSON LLP

Bethany W. Kristovich
pro hac vice forthcoming
Daniel B. Levin
pro hac vice forthcoming
Juliana M. Yee
pro hac vice forthcoming
Jessica O. Laird
pro hac vice forthcoming
350 South Grand Avenue, Fiftieth Floor
Los Angeles, California 90071-3426
Tel. (213) 683-9100

Attorneys for Movant, ByHeart, Inc.

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing **BYHEART'S REPLY IN SUPPORT OF EMERGENCY MOTION TO COMPEL PRODUCTION OF DRY MILK POWDER SAMPLES FOR TESTING AND DOCUMENTS FROM NON-PARTY DAIRY FARMERS OF AMERICA** with the Clerk of the Court for the United States District Court by using the court's CM/ECF system on the 5th day of February, 2026. Electronic service of the foregoing document shall be made in accordance with the CM/ECF E-Service System.

/s/ Jessica Malone
An employee of Knight & Ryan